# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER MICHAEL BERGNE,<br><br>　　　　Petitioner,<br><br>　　vs.<br><br>JAMES A. YATES,<br><br>　　　　Respondent.<br>_____/ | CASE NO. CV F 07-00003 LJO WMW HC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS WITH PREJUDICE; DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT; DENYING PENDING MOTIONS AS MOOT** |

On January 3, 2007, Peter Michael Bergne ("Petitioner"), a *pro se* California prisoner, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") challenging the denial of parole in 2005.[1]

On August 1, 2007, James A. Yates ("Respondent") filed a Motion to Dismiss the Petition, arguing that the Petition was untimely. (Doc. 11.) On August 14, 2007, Petitioner filed a "Traverse," ostensibly opposing the Motion to Dismiss. (Doc. 13.) On February 29, 2008, the Court denied Respondent's Motion to Dismiss. (Doc. 15.)

On May 23, 2008, Respondent filed a "Request for Stay Pending Issuance of the Mandate in

---

[1] Although petitions for habeas corpus relief are routinely referred to a Magistrate Judge, *see* L.R. 72-302, the Court exercises its discretion to address the Petition pursuant to Local Rule 72-302(d).

1

*Hayward*." (Doc. 17.)[2] On June 19, 2008, Petitioner filed a "Traverse," wherein he stated he did "not deny or object to [Respondent's] request for a stay pending issuance of the mandate in *Hayward*, in the reasonable presumption that the mandate will be issued within four to six calendar months." (Doc. 19.) After initially granting Respondent's stay request, on September 16, 2008, the magistrate judge vacated the grant and denied Respondent's stay request, finding that ample precedent from the Ninth Circuit Court of Appeals bore on Petitioner's claims for relief. (Docs. 20, 21.)

On October 24, 2008, Respondent filed an Answer to the Petition. (Doc. 25.) On November 12, 2008, Petitioner filed a Traverse to the Answer. (Doc. 26.) On March 2, 2009, Petitioner filed a motion requesting that the Court order the parole board to set and calculate a parole release date within the next ninety to 180 days. (Doc. 29.)

**PROCEDURAL HISTORY**

In 1990, a Ventura County Superior Court jury convicted Petitioner of second degree murder. (Pet. 3;[3] Answer 1.) The superior court sentenced Petitioner to fifteen years to life in state prison. (Pet. 3.)

On April 6, 2005, the California Board of Prison Terms ("Board")[4] denied Petitioner parole and stated it would review Petitioner's suitability again in four years. (Answer Ex. 4 at 110.) On May 19, 2005, Petitioner filed a habeas petition in the Ventura County Superior Court, alleging that 1) the Board has a routine practice of denying parole, 2) he was qualified for parole but it was denied, 3) and his parole hearing was unlawfully delayed, violating his due process rights. (Answer Ex. 1.) On June 20, 2005, the superior court denied the habeas petition in a reasoned opinion, noting that Petitioner failed to include a copy of the parole hearing transcript. (*Id.*)

In July 2005, Petitioner filed a petition for writ of mandate in the Sacramento County Superior

---

[2] On May 16, 2008, the Ninth Circuit Court of Appeals granted en banc review of *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008), and ordered that the opinion shall not be cited as precedent. *See Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008).

[3] For ease of reference, the Court utilizes the CM/ECF pagination from the Petition and from the Exhibits attached to Respondent's Answer.

[4] On July 1, 2005, California created the Board of Parole Hearings to replace the Board of Prison Terms. *See* Cal. Penal Code § 5075(a).

2

Court. (Answer Ex. 2.) That court construed the filing as a habeas petition and transferred it to the Ventura County Superior Court. (*Id.*)[5] On October 26, 2005, the superior court, noting that Petitioner now attached the 2005 parole hearing transcript, denied the habeas petition in a reasoned opinion. (*Id.*)

Petitioner again filed a petition for writ of mandate in the Sacramento County Superior Court, which construed it as a habeas petition and transferred the petition to the Ventura County Superior Court on May 18, 2006. (Answer Ex. 3.) On July 10, 2006, the Ventura County Superior Court denied the petition in a reasoned opinion. (Answer Ex. 4.)

Petitioner thereafter filed a habeas petition in the California Court of Appeal, which denied the petition on August 23, 2006, citing *In re Dannenberg*, 34 Cal. 4th 1061, 1071 (2005). (Answer Ex. 5.) Petitioner then filed a petition for review in the California Supreme Court, which summarily denied the petition on November 15, 2006. (Answer Ex. 6.)

On January 3, 2007, Petitioner filed his federal Petition in this Court. At the time of filing the Petition, Petitioner was incarcerated at Pleasant Valley State Prison in Coalinga, California. (Pet. 1.) Coalinga is in Fresno County, located within the jurisdictional boundaries of the United States District Court for the Eastern District of California. 28 U.S.C. § 84(b). The Petition is properly filed in this Court, located in the district that Petitioner was in custody at the time of filing the Petition. *See* 28 U.S.C. § 2241(d).

## **FACTUAL BACKGROUND**[6]

> PRESIDING COMMISSIONER LEE: I'm going to read the facts of the case. Facts of the case are being taken from the Board report dated September of 2004.
>
> "Summary of the Crime. On approximately July 26th, 1989, the victim Linda Lee Anderson, age 46, met with [Petitioner] for the first time at a McDonald's restaurant in Canoga Park. They talked for a short time. [Petitioner] gained the victim's telephone number. On July 28th, 1989, [Petitioner] arrived at Roswell Rehabilitation Institute for the Development of Growth and Educational Services, a.k.a. BRIDGES, to

---

[5] The superior court noted that the California Court of Appeal denied a "petition" on July 27, 2005. (Answer Ex. 2.) This Court agrees with Respondent's assertion that it is unclear whether the July 27, 2005, court of appeal denial addressed Petitioner's 2005 parole hearing. (*See* Answer 2 n.1.)

[6] The Court adopts the factual background from the April 6, 2005, Board transcript as a fair and accurate summary of the evidence presented at trial, which also includes Petitioner's version of the facts. Furthermore, because Petitioner challenges the denial of parole, the Court reiterates the reasons and basis for the Board's denial from the Board transcript.

3

pick up the victim and go out to dinner. At approximately 8:30, [Petitioner] returned without the victim and claimed she had become upset and left him to go shopping. Victim returned to BRIDGES at approximately nine P.M. and told her counselor that [Petitioner] had made sexual advances toward her. However, she subsequently agreed to another date. On August the 3rd, the year 1989, [Petitioner] arrived at BRIDGES for a date with victim. He signed out (inaudible) nine P.M. At 11 P.M. a man identifying himself as Michael Stokely (inaudible) by payphone and stated that the victim had met some friends and would be back late. The information was relayed to the program coordinator. On August 4th, 1989, a missing persons report was filed. A body later identified as that of the victim was found dead in an isolated dirt turnout north of Highway 118 in Simi Valley. Cause of death was determined to be from strangulation. [¶]

[Petitioner's] Version. [Petitioner] claims that he first met the victim Linda Lee Anderson on July 1st, 1989 at a McDonald's restaurant in Canoga Park. (Inaudible) he dated Linda on and off in the month of July. On August 3rd, 1989 Linda appeared agitated but agreeable to go out. [Petitioner] agreed to have dinner and a cigarette at a turnout near Northridge Mall in Northridge, California. [Petitioner] indicated that while sitting in the car, Linda exploded in a fit of rage when he made an effective advance toward her without force. [Petitioner] stated that Linda began punching him in the face and the shoulder area. [Petitioner] stated he defended himself by trying to keep her at arm's length by placing his hands on her head and neck, not realizing that she had stopped breathing. [Petitioner] attempted to revive the victim, was unsuccessful. [Petitioner] drove towards Simi Valley Medical Center with her in the car, but stopped at the turnout due to the vehicle overheating. [Petitioner] observed Linda's dress being raised and pulled it down partway. [Petitioner] then proceeded to cover her body with scraps of cardboard and then fled the scene in a state of panic. [Petitioner] states he is deeply remorseful."

. . . .

PRESIDING COMMISSIONER LEE: . . . At this time, the Panel has reviewed all information received from the Public and relied upon the following circumstances in concluding [Petitioner] is not suitable for parole and would pose an unreasonable risk of danger to society and a threat to the public safety if released from prison. [¶]
Number one, the commitment offense. The offense was carried out in an especially cruel and callous manner. Victim was abused and defiled after the offense. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. Motive for the crime was inexplicable or very trivial in relationship to the offense. The evidence before this Panel was that [Petitioner] apparently made advances toward this victim, not simply on the first occasion, but apparently attempted to kiss the victim after he had known previously that she had no desire of any sexual relationship. His statement confirmed the fact that she wished only a platonic relationship with the inmate. On the date that was in question, apparently based upon his statements, she struggled and he apparently strangled her in an attempt to calm her down. The report that was given and referred to by Counsel from the District Attorney's office indicates that there seems to be more to the fact scenario than that. I have verified that in the statement made to the probation officer that is also in the file, which indicates that apparently, out of curiosity, after the death of the victim, [Petitioner] loosened the victim's pants and rolled them down to the knees. He then did the same to her pantyhose and panties and looked at her thighs. He did not know where he obtained the KY jelly, although he

4

claimed it was from the victim and thought that she possibly had brought it in her paper bag. He opened the tube and put a little bit on his finger and put a little bit on the left side on her hip. He became aroused, although he did not have an erection. He didn't have the courage to have sex with her. He denied masturbating at any time and added, I was interested in making a physical observation of the victim. When [Petitioner] pulled the victim's pants down, the sanitary napkin that she was wearing became dislodged. [Petitioner] removed it, as it was ugly-looking, and placed it in a paper bag and put it in the car. He denied at that time touching the genitals. He then apparently took the body out of the vehicle and left it, put in cardboard to protect her from the elements. Appears that the sexual aspect of the allegations made by the District Attorney are supported by the statements made by the inmate. [¶]

Second reason for the denial is an escalating – his previous record, an escalating pattern of criminal conduct or violence. There seems to be numerous contacts with the law of a sexual nature. There are not a lot of convictions. However, there is a clear indication that on numerous occasions, he was questioned in regards to various acts of sexual impropriety. There is a history of unstable or tumultuous relationships with others. [¶]

The third reason for the denial is his actions while being instituted. In his institutional behavior, he has not programmed in a manner appropriate while incarcerated. He failed to develop a marketable skill that can be put to use upon release. He has failed to upgraded vocationally. . . . Psychiatric factors are very clear: it is unfavorable. Your parole plans are probably one of the greatest reasons why you are going to be denied. [Petitioner] lacks realistic parole plans. He has no residential place to stay. You have no employment plans. It is questionable as to whether or not you have a marketable skill, so I did not use that as a reason for denying your parole. . . . [¶]

At this time, the Panel makes the following findings: [Petitioner] continues to need therapy in order to face and discuss and understand and cope with stress in a non-destructive manner. Until progress is made, [Petitioner] continues to be unpredictable and a threat to others. Therapy in a controlled setting is needed, but motivation and amenability are questionable. [Petitioner's] gains are recent and he must continue to demonstrate and maintain gains over an extended period of time. . . . But at this point in time, we are denying you, and we are going to deny you for four years.

(Answer Ex. 4 at 80-82, 106-10.)

## PETITIONER'S CLAIMS

1. Petitioner's rights under state law and the Due Process Clause were violated when the Sacramento County Superior Court failed to adjudicate Petitioner's petition for writ of mandate (Pet. 6.);

2. Petitioner did not receive a fair and impartial Board hearing (*id.*);

3. The routine practice of the Board of denying parole for an unreasonably lengthy period of time violates due process and state law (*id.* 7); and

4. The lead Board Commissioner abused his discretion in a manner contrary to state law (*id.*).

## STANDARD OF REVIEW

The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), was signed into law and is thus subject to its

5

provisions. *See Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997). The standard of review applicable to Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.6 (9th Cir. 2000). Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000) (as amended). On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004); *see also Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Williams*, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." *Williams*, 529 U.S. at 406. However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8.

State court decisions which are not "contrary to" Supreme Court law may only be set aside on

federal habeas review "if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or are based on 'an *unreasonable* determination of the facts.'" *Early*, 537 U.S. at 11 (*quoting* 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. *Williams*, 529 U.S. at 406-10, 413; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." *Woodford*, 537 U.S. at 24-25, 27. An "unreasonable application" is different from an "erroneous" or "incorrect" one. *Williams*, 529 U.S. at 409-10; *see also Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Woodford*, 537 U.S. at 25.

A state court factual determination must be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

## **DISCUSSION**

### **Claim One**

In his first claim, Petitioner alleges his rights under state law and the Due Process Clause of the U.S. Constitution were violated by the Sacramento County Superior Court's refusal to adjudicate his petition for writ of mandate. (Pet. 6.)

To the extent Petitioner contends that the Sacramento County Superior Court violated state law, such a claim is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In addition, although the Sacramento County Superior Court construed Petitioner's petitions for writ of mandate as habeas petitions and subsequently transferred them to the Ventura County Superior Court, that court did adjudicate Petitioner's habeas petitions and found them without merit. Accordingly, Petitioner fails to specify where he was deprived of due process. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (stating a petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (finding a petitioner's conclusory allegations did not meet the specificity requirement); *James v. Borg*,

24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

For the foregoing reasons, the Court finds that the California courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## Claim Two

In his second claim, Petitioner asserts that he did not receive a fair and impartial Board hearing because of 1) a "vindictive district attorney's report tainted by the suppression of favorable evidence, misleading information and unduly libelous statements," 2) the failure to apply hearing procedures in accordance with state-created regulations, and 3) a commissioner that gave misleading information for Petitioner's record. (Pet. 6.) Because the California Supreme Court summarily denied this claim, the Court must "look through" to the last reasoned decision, that of the July 10, 2006, Ventura County Superior Court on habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). In rejecting Petitioner's claim, the superior court stated:

> [Petitioner's] latest petition, filed 6/13/06, was assigned to this court. This court went through the voluminous Ventura County file and studied the Board of Prison Terms hearing and decision of 4/6/05 before discovering that Judge Brodie (on 10/26/05) had previously ruled adversely to [Petitioner] on this same request to overturn the decision of the Board of Prison Terms.
> Having reviewed the files, transcript of the hearing before the Board of Prison Terms and its decision, this court will note that it concurs with Judge Brodie that there is ample evidence in the record to support and warrant the Commissioners' 4/6/05 denial of parole to [Petitioner] for a 4-year period.
> As [Petitioner] makes clear himself in prior habeas petitions, he has "suffered from the profound effects of a major mental illness for many years" (5/19/05 habeas petition). Although he attached only an excerpt of Robert Poston, Ph.D.'s psychological report of an evaluation prepared for his "September 2004 lifer hearing," his file does reflect, as the Board of Prison Terms noted, a "history of unstable and tumultuous relationships with others" (AR pg 8217-18); and inappropriate sexual activities that escalated to this killing. (AR 83/11-16).
> The Board expressed legitimate concern that [Petitioner], who has persisted in his self-defense justification for this murder for years, has not come to grips with his responsibility for strangling the victim and then abusing the defiling her dead body. The Board of Prison Terms' determination that [Petitioner] continues to present an unreasonable danger to society was supported by strong evidence that it cited in its findings.
> The Board of Prison Terms' findings that "[Petitioner] lacks realistic parole plans" and "has no residential place to stay" (AR 8/010-11) are also supported by evidence in the record. [Petitioner] relied on preconviction letters such as one dated 2/23/88 regarding his draftsman skills and contracting design work for Rocketdyne. Mechanical design drafting is now a heavily computer-based endeavor. Unlike many

prisoners seeking release on parole, [Petitioner] presents no letters of offers of employment. He only presents his own letters of inquiry and polite letters that the employer has no openings.
Similarly, although he claimed (in 7/99) to have lined up a residence at Passageways in Pasadena, the letter he submitted to the Board of Prison Terms did not in fact offer him housing; it only offered him the ability to apply for it upon his release.
On the merits, [Petitioner] has failed to show a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) Had the court appreciated that Judge Brodie had previously decided the same issues raised here, it would have summarily denied this habeas petition. (See *In Re Bevill* (1968 68 Cal.2nd 854, 863 fn. 9.)

(Answer Ex. 4 at 3-4.)

The July 10, 2006, Ventura County Superior Court opinion concurs with the previous October 26, 2005, Ventura County Superior Court opinion that denied Petitioner's prior habeas petition. (*See* Answer Ex. 4 at 3.) "Although AEDPA generally requires federal courts to review one state decision, if the last reasoned decision adopts or substantially incorporates the reasoning from a previous state court decision, we may consider both decisions to fully ascertain the reasoning of the last decision." *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (citation and internal quotation marks omitted). Thus, the Court also utilizes the October 26, 2005, Ventura County Superior Court opinion denying Petitioner's claim, which stated:

Petitioner's contentions regarding his hearing are basically boiled down to the Board did not consider 1) his good conduct in prison, 2) his job skills, and, 3) his parole plan. Those contentions are not born out by the facts. All of those items were considered. Petitioner and his attorney were both given an opportunity to be heard. At no time during the hearing did [Petitioner] or his attorney object to the hearing on the items presented for consideration.
The Commissioners denied [Petitioner's] parole on public safety grounds, which they are entitled to do (Penal Code §3041(b)). Only a modicum of evidence is required to support the Parole Board's finding (*In re Honesto* (2005) 130 Cal.App.4th 81, 94). The gravity of the crime and circumstances of the crime can be considered (*In re Lowe* (2005) 130 Cal.App.4th 1405, 1427). The Board may also consider psychological factors as well as other criteria (See *15 Cal. Code of Regulations §2402*).
It is the opinion of this court that there is ample evidence in the record to support the Board's findings in two areas. The circumstances of the offense and a psychological exam by two doctors that indicate "heightened concern regarding [Petitioner's] risk of future dangerousness."
As to [Petitioner's] contention that he is owed 10 months, it is clear from the paperwork that he requested the continuance for another evaluation.
The petition is therefore denied.

(Answer Ex. 2.)

## Current State of the Law

A due process claim is analyzed in two steps. *See Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

9

1123, 1127 (9th Cir. 2006). "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (*quoting Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

The Ninth Circuit has found it clearly established federal law that California "vests . . . California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (as amended) (*citing Bd. of Pardons v. Allen*, 482 U.S. 369, 377-78 (1987); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979); *Sass*, 461 F.3d at 1128; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002)). A prisoner is entitled to notice of the parole hearing, an opportunity to be heard, and if parole is denied, a statement of reasons for the denial. *See Greenholtz*, 442 U.S. at 16; *Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).

The Ninth Circuit has also found that "the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' *Sass*, 461 F.3d at 1128-29 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)); *see also Biggs*, 334 F.3d at 915 (citing *McQuillion*, 306 F.3d at 904), or is 'otherwise arbitrary,' *Hill*, 472 U.S. at 457." *Irons*, 505 F.3d at 851. "Additionally, the evidence underlying the board's decision must have some indicia of reliability." *McQuillion*, 306 F.3d at 904 (*quoting Jancsek*, 833 F.2d at 1390); *see Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam). The Supreme Court has elaborated the "some evidence" standard:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the . . . board. . . . The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Hill*, 472 U.S. at 455-56 (citations omitted). When assessing whether a state parole board's suitability determination was supported by "some evidence" in a habeas case, the analysis is "framed by the statutes

10

and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851 (*citing Biggs*, 334 F.3d at 915).

Thus, the Court "must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' . . . constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Irons*, 505 F.3d at 851.[7]

The Board's parole suitability decisions are governed by California Penal Code section 3041 and title 15, section 2402 of the California Code of Regulations. *See In re Lawrence*, 44 Cal. 4th 1181, 1201-02 (2008).[8] The Board "shall normally set a parole release date" one year prior to the inmate's minimum eligible parole release date, and shall set the date "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." *Id.* at 1202; *see* Cal. Penal Code § 3041(a). A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." *Lawrence*, 44 Cal. 4th at 1202; *see* Cal. Penal Code § 3041(b).

Title 15, section 2402 of the California Code of Regulations is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. *Lawrence*, 44 Cal. 4th at 1202; *see* Cal. Code Regs. tit. 15, § 2402(a). "All relevant, reliable information available to the panel shall be considered in determining suitability for parole." Cal. Code Regs. tit. 15, § 2402(b). The regulation lists factors relating to suitability and unsuitability for parole. *See id.* § 2402(c), (d). The *Lawrence* court stated:

---

[7] The Ninth Circuit did note, however, that, at least as applied to the particular facts in *Irons*, *Sass*, and *Biggs*, "due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Irons*, 505 F.3d at 853-54. Here, however, Petitioner had already served the minimum term of his sentence when the Board denied parole in 2005. (*See* Answer Ex. 4 at 72.)

[8] The Court "must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole," *Irons*, 505 F.3d at 851, and accordingly utilizes *In re Lawrence* and *In re Shaputis*, 44 Cal. 4th 1241 (2008), *infra*, as the latest California Supreme Court cases discussing parole suitability. *See Estelle*, 502 U.S. at 67-68 (stating a federal court is bound by a state court's construction of its own laws); *see also Bradshaw*, 546 U.S. at 76.

11

> [T]he core determination of "public safety" under the statute and corresponding regulations involves an assessment of an inmate's *current* dangerousness. . . . These factors are designed to guide an assessment of the inmate's threat to society, *if released*, and hence could not logically relate to anything but the threat *currently* posed by the inmate.
>
> . . . .
>
> [U]nder the statute and the governing regulations, the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public.

*Lawrence*, 44 Cal. 4th at 1205-06, 1212.

"Accordingly, when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *Id.* at 1212.

With regard to the Board's reliance solely on the commitment offense to deny parole, the *Lawrence* court held:

> [A]lthough the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

*Lawrence*, 44 Cal. 4th at 1214. The California Supreme Court then gave an example of when a prisoner's commitment offense could show present dangerousness:

> [C]ertain conviction offenses may be so "heinous, atrocious or cruel" that an inmate's due process rights would not be violated if he or she were to be denied parole on the basis that the gravity of the conviction offense establishes current dangerousness. In some cases, such as those in which the inmate has failed to make efforts toward rehabilitation, has continued to engage in criminal conduct postincarceration, or has shown a lack of insight or remorse, the aggravated circumstances of the commitment offense may well continue to provide "some evidence" of current dangerousness even decades after commission of the offense.
>
> . . . .
>
> [W]here the record also contains evidence demonstrating that the inmate lacks insight into his or her commitment offense or previous acts of violence, even after rehabilitative programming tailored to addressing the issues that led to commission of the offense, the aggravated circumstances of the crime reliably may continue to predict current dangerousness even after many years of incarceration.

12

*Lawrence*, 44 Cal. 4th at 1228; *see also In re Shaputis*, 44 Cal. 4th 1241 (2008).

Analysis

Applying the aforementioned framework, some evidence in the record supports the Board's finding that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society and a threat to the public safety if released from prison. *Hill*, 472 U.S. at 455-56; *Irons*, 505 F.3d at 851; *Lawrence*, 44 Cal. 4th at 1205-06, 1212. The Ventura County Superior Court, in two separate opinions, stated that the following reasons in the Board's denial of parole found support in the record: 1) the circumstances of the offense; 2) a psychological exam by two doctors that indicate "heightened concern regarding [Petitioner's] risk of future dangerousness"; 3) a "history of unstable and tumultuous relationships with others"; 4) inappropriate sexual activities that escalated to the commitment offense; 5) Petitioner had persisted in his self-defense justification for the murder for years, and had not come to grips with his responsibility; 6) Petitioner did not have "realistic parole plans"; and 7) Petitioner had "no residential place to stay." (Answer Exs. 2, 4.) The Court analyzes each of the bases for Petitioner's current dangerousness.

As stated by the Board, the strangulation murder "was carried out in an especially cruel and callous manner" and "in a manner which demonstrates an exceptionally callous disregard for human suffering." (Answer Ex. 4 at 106); *see* Cal. Code Regs. tit. 15, § 2402(c)(1)(D). In addition, the Board stated the victim was abused and defiled after the offense, and that the motive for the crime was inexplicable or very trivial in relationship to the offense. (Answer Ex. 4 at 106); *see* Cal. Code Regs. tit. 15, § 2402(c)(1)(C), (E). These factors of unsuitability for parole are supported by the facts of the commitment offense recited by the Board, and Petitioner affirmatively stated he did not dispute these facts at the parole hearing. (*See* Answer Ex. 4 at 83.)

The Board read into the record of the parole hearing the psychiatric report of Dr. Adam Goldyne dated December 20, 2004, which stated:

> "[Petitioner] manifested two of the features of Paranoid Personality Disorder. While four features are required for a formal diagnosis to be made, these features clearly had significant impact on his interpersonal functioning. They are, one, he is distrustful and suspicious of others; two, he reads demeaning and threatening meanings into benign remarks and events. [Petitioner] has displayed multiple features of Anti-Social Personality Disorder. The data available suggest that as a child, [Petitioner] met criteria for Conduct Disorder, a childhood diagnosis which is a prerequisite for the adult

13

|   |   |
|---|---|
| 1 | diagnosis of Anti-Social Personality Disorder. This diagnosis rests on the fact that he threatened others and that he had a gun, that he stole, that he may have forced sexual activity on others, and that he was truant. Furthermore, as an adult, [Petitioner] manifested multiple features of Anti-Social Personality Disorder, including aggressiveness, reckless disregard for others' safety, performing acts which are grounds for arrest. Currently, much opportunity for such behavior is limited by incarceration and cannot be adequately assessed. However, he does continue to manifest one important feature of Anti-Social Personality Disorder. *During this interview, he extensively rationalized his instant offense and other instances in which he has hurt others.*" |

(Answer Ex. 4 at 93-94 (emphasis added)); *see* Cal. Code Regs. tit. 15, § 2402(c)(5) (including factor of unsuitability "Psychological Factors[:] The prisoner has a lengthy history of severe mental problems related to the offense"). This report, dated less than four months before the parole hearing, also supports the superior court's finding that Petitioner did not "come to grips" with his responsibility to the commitment offense. *See Shaputis*, 44 Cal. 4th at 1259-60 (upholding Board's denial of parole where, in addition to the circumstances of the commitment offense, the Board found that petitioner failed to take responsibility for the commitment offense and failed to gain insight into his previous violent behavior); *Lawrence*, 44 Cal. 4th at 1228.

The superior court's reasons of Petitioner's "history of unstable or tumultuous relationships with others" and inappropriate sexual activities that escalated to the commitment offense are supported by a report by Dr. Robert Poston, dated September 7, 2004, read into the parole hearing record:

> "Within a controlled setting, [Petitioner] has been a victim of violence in prison, but there is no record of assaultiveness on his part. All disciplinary action against him were for nonviolent offenses. His risk for violence in a controlled setting is seen as no greater than the average inmate. [Petitioner] has a history that gives rise to some concern regarding his dangerousness if release from prison. There is a record of poor grades and truancy, possession of a firearm, possession of switchblade dagger, attempted assault on a nine year old cousin, apparently coercing or threatening others into sexual activity, stealing, and being described as unmanageable in school. Incidents of concern include a 1951 assault with a chair on a 73 year old grandfather, a 1961 arrest for gross indecency with a minor, and a 1966 arrest for sodomy and trespass. Disciplinary actions in prison include creating unrest in the inmate population, bribery of a correctional officer, disobeying an order, and refusing to work. At the time of [Petitioner's] arrest, there was a firearm in his possession. A consideration of these factors, along with his paranoid personality, indicate heightened concern regarding [Petitioner's] risk for future dangerousness. Significant Risk Factors, Precursors to Violence: No significant risk factors are apparent in this case. There are no indications of drug alcohol played a role in the commission of his crime."

(Answer Ex. 4 at 95-96; *see also id.* at 36 (Dr. Goldyne concurring with Dr. Poston's assessment of Petitioner's dangerousness).) There is also support in a social history read into the parole hearing record:

> "[Petitioner] was born on September 2nd, 1942 in Jamaica. He had two sisters and two

brothers. Father died in 1946. That was the year his family moved to New York City. In 1957, at the age of 15, he was hospitalized at Marcy State Hospital, Utica, New York because of arguments and lewd conduct with his cellmates. He was given a diagnosis of schizophrenia mixed type. Finally he moved with his mother and stepfather to San Antonio, Texas, where he was considered unmanageable at school, at one point in time engaging in public masturbation. He reportedly threatened several girls with sexual violence while holding a loaded revolver. He was given Thorazine and individual therapy at that time. From 1958 to 1969, he attended Manlius Military Academy in the ROTC program. Apparently was discharged because he stole personal property and having widespread continuous homosexual activity with six other males. In 1960, he was readmitted to Marcy State Hospital because of truancy and hostility. In 1961, he was (inaudible). He stayed in the hospital until 1964, although he did escape several times. After his release at the age of 22, he seemed to settle down. His sexual orientation became mostly heterosexual (inaudible) encounters with prostitutes."

(Answer Ex. 4 at 97-98); *see* Cal. Code Regs. tit. 15, § 2402(c)(2), (3), (4) (including factors of unsuitability "Previous Record of Violence," "Unstable Social History," and "Sadistic Sexual Offenses").

As also stated by both the Board and the superior court, Petitioner did not have "realistic parole plans." Petitioner's pre- and post-conviction letters attached to his Petition are not offers of employment, but instead are references, or offers to *consider* Petitioner's availability for employment upon parole. (*See* Pet. 55-56; Answer Ex. 4 at 58, 65.) In addition, Petitioner had "no residential place to stay," and the letters Petitioner includes with his Petition only offer him the opportunity to *apply* for housing upon release. (*See* Pet. 49.) In a document filed with the Court on October 9, 2008, Petitioner attaches a letter from the Canyon Country Ministry offering a "bed available for [Petitioner] upon his release from prison"; however, this letter is dated February 10, 2007, *after* Petitioner's 2005 parole denial. (*See* Doc. 24 at CM/ECF p. 6.)

In consideration of the aforementioned circumstances, the Ventura County Superior Court had "some evidence," consistent with *Hill*, 472 U.S. at 454, to conclude that Petitioner constitutes a current threat to public safety as articulated in *Lawrence*, 44 Cal. 4th at 1212, and in the California statutes and regulations defining parole suitability. *See Irons*, 505 F.3d at 851.

Accordingly, the Court finds that the California courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the

15

United States Supreme Court. Thus, habeas relief is not warranted on this claim.[9]

## Claim Three

In his third claim, Petitioner contends that the routine practice of the Board of denying parole for an unreasonably lengthy period of time violates due process. (Pet. 7.) Petitioner states that the Board's decision was based upon the "serious" or "exceptional" nature of his crime, without fairly considering the meritorious balancing factors of rehabilitation, job skills, remorse, mature age, and lack of recidivism potential as enunciated in state law. (*Id.*)

To the extent Petitioner contends that the Board and/or the Ventura County Superior Court violated state law, such a claim is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68; *Langford*, 110 F.3d at 1389. As discussed in Claim Two, *supra*, some evidence supports the superior court's finding that Petitioner constitutes a current threat to public safety if released. In addition, the Board "enjoys broad discretion in parole-related decisions. *In Re Powell*, 45 Cal. 3d 894, 248 Cal.Rptr. 431, 755 P.2d 881, 886 (1988). In exercise of this broad discretion the Board may deny parole for up to five years for an inmate convicted of murder if the Board finds 'that it is not reasonable to expect that parole would be granted at a hearing during the [next five] years.'" *Rosas*, 428 F.3d at 1232 (*quoting* Cal. Penal Code § 3041.5(b)(2)(B) (1994) (amended 2008)).

Accordingly, the Court finds that the California courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## Claim Four

In his fourth and final claim, Petitioner alleges that the lead Board commissioner at his hearing abused his discretion in a manner contrary to state-created law. (Pet. 7.) Petitioner's contention that the Board violated state law is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68; *Langford*, 110 F.3d at 1389.

Accordingly, the Court finds that the California courts' rejection of Petitioner's claim was neither

---

[9] Additionally, Petitioner's assertion that he did not receive a fair and impartial Board hearing is conclusory and unsupported by the hearing transcript. *See Jones v. Gomez*, 66 F.3d at 204-05; *James v. Borg*, 24 F.3d at 26. Petitioner was given notice of the parole hearing, an opportunity to be heard, and a statement of reasons for the parole denial. (*See* Answer Ex. 4 at 77-78, 83-86, 106-12); *Greenholtz*, 442 U.S. at 16; *Jancsek*, 833 F.2d at 1390.

contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

**Certificate of Appealability**

Because Petitioner challenges the denial of parole, a certificate of appealability is not required. *See* 28 U.S.C. § 2253(c)(1)(A); *Rosas*, 428 F.3d at 1231-32 (finding habeas petitioner was not required to obtain certificate of appealability where "target" of his challenge was not state court judgment or sentence but state Board's administrative decision to deny parole).

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court DENIES the Petition for Writ of Habeas Corpus with prejudice and DENIES any pending motions as moot. The Clerk of Court is ORDERED to enter Judgment for Respondent and to close Case No. CV F 07-00003 LJO WMW HC.

IT IS SO ORDERED.

**Dated: April 21, 2009**            /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE